**Alpha Otis O'Daniel STEPHENS, Petitioner,**

**v.**

**Ralph KEMP, Superintendent, Georgia Diagnostic and Classification Center, Respondent.**

**Civ. A. No. 84–484–1–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

Dec. 6, 1984.

Sumner & Hewes, William Sumner, Quintus W. Sibley, Atlanta, Ga., Thomas M. Lahiff, Jr., Kathryn Keneally, New York City, Kilpatrick & Cody, Virginia Taylor, Atlanta, Ga., for petitioner.

William B. Hill, Jr., Senior Asst. Atty. Gen., Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent.

OWENS, Chief Judge:

Petitioner Alpha Otis O'Daniel Stephens is before this court on his third application for habeas corpus relief under 28 U.S.C.A. § 2254 (West 1977).[1] In his petition, petitioner asserts only one claim in support of his prayer for relief: the inadequacy of the trial court's instructions to the jury regarding the meaning and role of mitigating circumstances.

The respondent has answered by denying that any of petitioner's constitutional rights have been violated as a result of the sentencing phase charge. The respondent further pleads that this action constitutes an abuse of the habeas corpus process, and has therefore moved to dismiss this action pursuant to Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C.A. foll. § 2254 (West 1977).[2] Respondent asserts that petitioner should have raised this claim in his second application for habeas corpus relief filed before this court on November 15, 1983. An evidentiary hearing, as required by *Potts v. Zant*, 638 F.2d 727, 747 (5th Cir.), *cert. denied*, 454 U.S. 877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981), was held on December 5, 1984.

### Issues Presented

The court perceives that two issues have been raised by petitioner's application. First, both parties agree that the constitutional sufficiency of the trial court's charge on mitigating circumstances was specifically considered and ruled upon against petitioner in his first application for federal habeas corpus relief. *Stephens v. Zant*, 631 F.2d 397, 404–05 (5th Cir.1980), *modified on reh'g*, 648 F.2d 446 (5th Cir.1981), *rev'd on other grounds*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (hereinafter referred to as *Stephens I*). Petitioner maintains, however, that there has been an intervening change in the law which renders his sentencing phase charge constitutionally insufficient. Therefore, the court must determine if such a change has in fact occurred. Second, respondent, while not conceding that there has been an intervening change in the law, argues that if such a change occurred, it took place prior to the November, 1983, filing of petitioner's second application for federal habeas corpus relief, and that petitioner, having failed to raise this claim in his second petition, should now be precluded from asserting this issue. Therefore, assuming a change in the law occurred, this court must determine if this change took place prior to November, 1983, and, if so, whether petitioner can be excused for failing to present this claim in his previous appearance before this court.

### The Jury Charge on Mitigation—Intervening Change in the Law

The sentencing phase of petitioner's trial took place on January 21, 1975. The trial court gave the following further charge regarding the definition and role of mitigating circumstances:

FURTHER CHARGE OF THE COURT:

Gentlemen of the Jury, the defendant in this case has been found guilty at your hands of the offense of Murder, and it is your duty to make certain determinations

---

**1.** The procedural history of petitioner's case is set forth in this court's opinion issued in response to petitioner's second application for habeas corpus relief. *Stephens v. Kemp*, 578 F.Supp. 103, 104–05 (M.D.Ga.), *aff'd*, 721 F.2d 1300 (11th Cir.1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 530, 83 L.Ed.2d 417 (1984).

Following the United States Supreme Court's denial of certiorari on November 26, 1984, the Bleckley County Superior Court ordered that petitioner be executed on December 12, 1984. A petition for habeas corpus was filed in the Superior Court of Butts County, Georgia, on December 3, 1984, wherein petitioner asserted the identical issue raised in this court. By order dated December 5, 1984, petitioner's application for relief and a stay of execution was denied. The Supreme Court of Georgia denied petitioner's application for a certificate of probable cause to appeal on the same day.

**2.** Rule 9(b) provides:

(b) Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

with respect to the penalty to be imposed as punishment for that offense. Now in arriving at your determinations in this regard you are authorized to consider all of the evidence received in court throughout the trial before you. You are further authorized to consider all facts and circumstances presented in extinuation [sic] mitigation and aggravation of punishment as well as such arguments as have been presented for the State and for the Defense. Under the law of this State every person guilty of Murder shall be punished by death or by imprisonment for life, the sentence to be fixed by the jury trying the case. In all cases of Murder for which the death penalty may be authorized the jury shall consider any mitigating circumstances or aggravating circumstances authorized by law. You may consider any of the following statutory aggravating circumstances which you find are supported by the evidence. One, the offense of Murder was committed by a person with a prior record of conviction for a Capital felony, or the offense of Murder was committed by a person who has a substantial history of serious assaultive criminal convictions. Two, the offense of Murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim. Three, the offense of Murder was committed by a person who has escaped from the lawful custody of a peace officer or place of lawful confinement. These possible statutory circumstances are stated in writing and will be out with you during your deliberations on the sentencing phase of this case. They are in writing here, and I shall send this out with you. If the jury verdict on sentencing fixes punishment at death by electrocution you shall designate in writing, signed by the foreman, the aggravating circumstances or circumstance which you found to have been proved beyond a reasonable doubt. Unless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death. If you fix punishment at death by electrocution you would recite in the exact words which I have given you the one or more circumstances you found to be proven beyond a reasonable doubt. You would so state in your verdict, and after reciting this you would state, we fix punishment at death. On the other hand, if you recommend mercy for the defendant this will result in imprisonment for life of the defendant. In such case it would not be necessary for you to recite any mitigating or aggravating circumstances as you may find, and you would simply state in your verdict, we fix punishment at life in prison. Now, whatever your verdict may be with respect to the responsibility you have regarding sentencing please write these out, Mr. Foreman, immediately below the previous verdict you have rendered. Be sure that it is dated and that it bears your signature as foreman. Once again when you have arrived at your verdict on the sentencing phase of the case let us know. We will then receive the verdict from you and have it published here in open court. Please retire now and consider the sentence in this case.

REPORTER'S NOTE: The jury retires from the courtroom.

Record at 320–22.

In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the plurality opinion of the Supreme Court held that a jury considering the imposition of the death penalty must be allowed to consider, as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 604, 98 S.Ct. at 2965.

In October of 1978, the former Fifth Circuit Court of Appeals interpreted *Lockett* as requiring a specific charge defining and explaining mitigating circumstances:

This constitutional requirement to allow consideration of mitigating circumstances would have no importance, of course, if the sentencing jury is unaware of what

it may consider in reaching its decision. We read *Lockett* and *Bell* [*v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978)], then, to mandate that the judge clearly instruct the jury about mitigating circumstances and the option to recommend against death.

*Chenault v. Stynchcombe*, 581 F.2d 444, 448 (5th Cir.1978).

Petitioner's first petition for a federal writ of habeas corpus was filed in this court on February 8, 1979. In this petition, petitioner asserted that the trial court's charge on mitigating circumstances was inadequate. On appeal to the former Fifth Circuit, the NAACP Legal Defense Fund filed a brief as *amicus curiae* (see Appendix A to this opinion), wherein this issue was specifically raised in light of *Chenault. See* Brief for *Amicus Curiae* at 35–47, *Stephens v. Zant*, 631 F.2d 397 (5th Cir.1980) (reproduced herein as Appendix A). The Fifth Circuit Court of Appeals rejected this claim, stating:

III. IMPROPER JURY INSTRUCTION

Petitioner contends that, while the jury was instructed in the sentencing phase of the trial that it must find at least one statutory aggravating circumstance before it could impose a death sentence, it was not instructed that even if it found such a circumstance it need not impose death.

When an appellate court reviews the adequacy of an instruction to the jury, it must view the charge as a whole. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. Brooks*, 611 F.2d 614, 619 (5th Cir.1980). Only when the charge taken in its entirety fails to fairly present the issues to the jury will error be found. *United States v. Chandler*, 586 F.2d 593, 606 (5th Cir.1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979).

In his charge to the jury, the trial judge instructed them that they were to consider all the evidence of the case, including evidence of mitigation and aggravation. He told the jury that unless one of the statutory aggravating circumstances was found to be proven beyond a reasonable doubt, they would not be authorized to impose a death penalty. He then specified which aggravating circumstances they would consider. He told them that if they wished to recommend mercy, they did not have to recite any mitigating or aggravating circumstances they might find. He concluded by instructing them how to fill out the forms.

Considering the charge as a whole, it is clear that the issue was fairly presented to the jury. The clear implication of the charge that the jury could recommend mercy without stating what mitigating or aggravating circumstances they found to be present is that aggravating circumstances could be present and yet the jury could still be free to impose life imprisonment. Petitioner's contention is rejected.

*Stephens I*, 631 F.2d at 404–05. Inexplicably, the opinion failed to cite or distinguish *Chenault.*

Subsequent decisions by Unit B. of the former Fifth Circuit Court of Appeals and by the Eleventh Circuit Court of Appeals—all of which cite and rely upon *Chenault*—have reiterated the principle that the trial court must define and explain the term mitigating circumstances. In *Spivey v. Zant*, 661 F.2d 464 (5th Cir.1981) (Unit B), decided on November 16, 1981, the court, after discussing *Chenault* at length, *id.* at 470–71, stated:

[W]e hold that the eighth and fourteenth amendments require that when a jury is charged with the decision whether to impose the death penalty, the jury must receive clear instructions which not only do not preclude consideration of mitigating factors, *Lockett*, but which also 'guid[e] and focu[s] the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender ...' *Jurek v. Texas*, 428 U.S. [262] at 274, 96 S.Ct. [2950] at 2957 [49 L.Ed.2d 929 (1976)]. In most cases, this will mean that the judge must clearly and explicitly instruct the jury about mitigating circumstances

and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations.

*Id.* at 471.

In *Westbrook v. Zant,* 704 F.2d 1487 (11th Cir.1983), decided on May 16, 1983, the court reviewed an instruction similar to the charge at issue in the instant action:

> You are authorized to consider the facts and circumstances, if any, in extenuation, mitigation or aggravation of punishment which may have been submitted to you. However, it is not essential to your decision that you find extenuating or mitigating facts and circumstances on the one hand, or facts and circumstances in aggravation on the other. Please do not confuse this with a charge which I shall give you a little bit later insofar as a statutory aggravating circumstance may be concerned.

*Id.* at 1501. The court ruled that this charge was constitutionally inadequate:

> The charge fails to provide clear instructions on the function of mitigating circumstances and no guidance on the relationship between mitigating and aggravating circumstances. As *Spivey v. Zant* teaches, jury instructions must 'describe the nature and function of mitigating circumstances' and 'communicate to the jury that the law recognizes the existence of facts or circumstances which, though not justifying or excusing the offense, may properly be considered in determining whether to impose the death sentence.' 661 F.2d at 472 (footnote omitted). *See also Coker v. Georgia,* 433 U.S. 584, 590–91, 97 S.Ct. 2861, 2865, 53 L.Ed.2d 982 (1977). The *Spivey* court explained that most cases will require the court to 'tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations.' 661 F.2d at 471 (footnote omitted).
>
> Although the charge authorized the jury to consider circumstances in extenuation or mitigation, *see* portion of charge cited, *supra,* at 1501, the court failed to explain

what function such a consideration would play in sentencing deliberations. An authorization to consider mitigating circumstances is a hallow instruction when unaccompanied by an explanation informing the jury why the law allows such a consideration and what effect a finding of mitigating circumstances has on the ultimate recommendation of sentence. We cannot fit this instruction within the requirements of *Spivey.* 'Capital sentencing instructions which do not clearly guide a jury in its understanding of mitigating circumstances and their purpose ... violate the eighth and fourteenth amendments.' *Goodwin* [*v. Balkcom*], 684 F.2d 794, 801–02 [ (11th Cir.1982) ] (footnote omitted). Therefore, Westbrook's habeas corpus petition seeking relief from his death sentence must be granted on this ground because of the sentencing instructions's inadequacies concerning the nature and function of mitigating circumstances.

*Id.* at 1503.

In *Finney v. Zant,* 709 F.2d 643 (11th Cir.1983), decided on July 11, 1983, the court found the jury charge on mitigating circumstances "virtually identical" to the charge found inadequate in *Westbrook,* and granted the writ of habeas corpus on that ground. *Id.* at 646.

As noted, the decision in *Spivey* relies heavily upon *Chenault,* and both *Westbrook* and *Finney* rely upon *Spivey.* None of these cases purport to explain or distinguish the panel's ruling in *Stephens I* upholding the charge on mitigating circumstances. In fact, this court has found no Fifth or Eleventh Circuit opinion after *Chenault* upholding a charge as limited as the instruction given in petitioner's case. Nevertheless, petitioner's claim was fully and fairly litigated, and a panel of the former Fifth Circuit Court of Appeals has squarely rejected the identical claim presented here.

▪ Petitioner, citing *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), argues that *Spivey, Westbrook,* and *Finney* constitute an inter-

vening change in the law, arising since the date of his first federal habeas appeal, and that this change entitles him to relitigate the identical claim in this his third application for federal habeas corpus relief. This court does not agree that a change in the law occurred. The decision in *Chenault* established the law on this issue. *Chenault*, of course, was decided prior to the decision in *Stephens I.* *Chenault* was urged upon the panel as a basis for relief, but the panel found the charge constitutionally sufficient. The decisions in *Spivey*, *Westbrook*, and *Finney* simply embellish the foundation laid in *Chenault.* They do not represent a "change" in the governing law. Consequently, this court must view the apparent dichotomy between *Stephens I* and *Chenault*, *Spivey*, *Westbrook*, and *Finney* as a difference of opinion among various panels of the Circuit Court in the application of pre-existing law. Contrary to petitioner's invitation, this court is without authority to "overrule" or ignore the prior Fifth Circuit opinion in this case. *See Westbrook v. Zant*, 743 F.2d 764, 768–69 (11th Cir.1984). Accordingly, petitioner's application is without constitutional merit.

*Abuse of the Writ and Excusable Neglect*

Assuming that its interpretation of the preceding issue is incorrect, the court must consider the issue of whether petitioner can be excused for failing to raise this claim in his second federal habeas petition.

Petitioner's present counsel stated in argument that they first became associated with this case in the summer preceding petitioner's second habeas petition, which they filed on November 15, 1983. They argued that, in light of the Fifth Circuit's original ruling upholding the sufficiency of the charge concerning mitigating circumstances, they reasonably concluded that there was no reason to investigate or research any issues arising from the trial court's sentencing phase charge. Therefore, they claim, they were unaware of the existence and possible relevance of *Spivey*, *Westbrook*, or *Finney.* According to petitioner's counsel, they inadvertently discovered the possible applicability of these cases *after* this court had ruled upon their second petition. Counsel concede that these cases could have been discovered prior to November of 1983, and thus their failure to do so was, in hindsight, a form of neglect. Nevertheless, arguing that the Fifth Circuit in petitioner's first federal habeas appeal apparently foreclosed any relitigation of the jury charge issue, petitioner asserts that his failure to assert this claim in November, 1983, was the result of "excusable neglect" under *Thomas v. Zant*, 697 F.2d 977, 986 (11th Cir.1983), and that he is therefore entitled to be heard on the merits of this claim.

The court cannot accept this explanation. *Spivey*, *Westbrook*, and *Finney* were all decided long before November 15, 1983. Petitioner's lead counsel admits that neither he nor any of the lawyers (including local Georgia counsel) or paralegals assisting him made any effort prior to the filing of the second petition to research the decided cases upon which he now relies. Petitioner's lead counsel is a member of a law firm that employs over 350 attorneys, and possesses the most modern legal research facilities, including computer assisted legal research services. Counsel concede that, had any effort been made, *Spivey*, *Westbrook*, and *Finney* could have been discovered and analyzed prior to November, 1983. By simply "Shepardizing" the Fifth Circuit's prior decision *in their own case*, counsel would have been alerted to the decision in *Westbrook*, which in turn relies upon *Spivey* and controls *Finney.* Similarly, the use of basic research techniques such as the West Key Number System, Westlaw, or Lexis would have identified the possible relevance of these cases prior to the filing of petitioner's second petition. Finally, the court is not convinced that petitioner's counsel in good faith believed that they were completely precluded from challenging the sentencing phase charge. Indeed, in petitioner's second habeas petition he specifically challenged the sufficiency of the sentencing phase charge insofar as it failed to instruct the jury that the

death penalty required a finding that petitioner actually killed or intended to kill his victim. *See Stephens v. Kemp*, 578 F.Supp. at 106–07.

■ If there has been an intervening change in the law, the change occurred prior to the filing of petitioner's second habeas petition on November 15, 1983. With respect to this third petition, there has been no intervening change in the law; petitioner's claim accrued before his second petition was filed. Counsel for petitioner have failed to proffer a reasonable explanation for their failure to ascertain the existence and possible significance of the reported cases signifying this change.

In order to determine if the failure to raise this claim in a prior action is attributable to "excusable" neglect, the court must consider the interests of justice with respect to all of the parties. The court obviously appreciates the magnitude of this case and petitioner's sentence. However, the court must also consider that petitioner was tried and sentenced in 1975. Society is entitled to expect finality in litigation. The state's ability to present evidence at a subsequent resentencing diminishes every day. Petitioner has possessed the tools with which to construct his claim at least as early as the *Spivey* decision in 1981, yet he has failed to do so until the eleventh hour. Finally, his claim has been fully briefed, litigated, and decided adverse to petitioner by a panel of the former Fifth Circuit Court of Appeals. This decision suggests that petitioner's sentence, despite the trial court's charge, is not the result of plain error or fundamental unfairness. Accordingly, the court hereby determines that petitioner's failure to raise this claim in his second habeas petition was inexcusable.

### Conclusion

Petitioner's claim regarding an intervening change in the law with respect to the jury charge on mitigation is without merit; the prior decision on this issue in *Stephens v. Zant*, 631 F.2d 397, 404–05 (5th Cir.1980) requires a dismissal of this action. Alternatively, even if petitioner's claim regarding an intervening change in the law is correct, petitioner's failure to assert this issue in his second federal habeas petition was and is inexcusable. Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C.A. foll. § 2254 (West 1977). Accordingly, petitioner's application for habeas corpus relief is DENIED. Petitioner's motion for a stay of execution is similarly DENIED.

APPENDIX "A"

IN THE

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 79–2407

ALPHA OTIS STEPHENS,

Petitioner-Appellant,

-v.-

WALTER ZANT, Warden, Georgia Diagnostic & Classification Center,

Respondent-Appellee.

On Appeal from the United States District Court
for the Middle District of Georgia
Macon Division

BRIEF OF <u>AMICUS CURIAE</u> NAACP LEGAL
DEFENSE AND EDUCATIONAL FUND, INC.

JACK GREENBERG
JAMES M. NABRIT, III
JOEL BERGER
JOHN CHARLES BOGER
DEBORAH FINS
  10 Columbus Circle
  New York, New York 10019
  Telephone: (212)586-8397

ANTHONY G. AMSTERDAM
  Stanford University Law School
Of Counsel:          Stanford, California 94305
                  Telephone: (415)497-3553
RICHARD SHAPIRO
H. DIANA HICKS          ATTORNEYS FOR THE NAACP
SOUTHERN PRISONERS' DEFENSE  LEGAL AND EDUCATIONAL FUND,
COMMITTEE              INC.
  344 Camp Street
  New Orleans, Louisiana 70130

U.S. COURT OF APPEALS
FILED
OCT 31 1979
GILBERT F. GANUCHEAU
Clerk

## TABLE OF CONTENTS

                                     <u>Page</u>

STATEMENT OF INTEREST OF <u>AMICUS CURIAE</u> ..................... 969

ISSUES PRESENTED ............................................... 970

STATEMENT OF THE CASE ......................................... 970

  Course Of Prior Proceedings ......................................... 970

  Statement Of Facts ............................................... 971

SUMMARY OF ARGUMENT ......................................... 974

ARGUMENT ..................................................... 974

  Introduction ................................................... 974

I   Appellant's Death Sentence, Which Was Based In Part On An Unconstitutionally Vague Aggravating Circumstance, Violates The Eighth And Fourteenth Amendment ......................................... 976

II  The Trial Court's Failure Adequately To Instruct Appellant's Jury Concerning Its Sentencing Responsibilities Under Ga. Code Ann. § 27-2534.1(6)—Especially As To The Nature And Significance Of Mitigating Circumstances And The Jury's Power To Impose A Life Sentence Despite A Finding Of Aggravating Circumstances—Renders Appellant's Death Sentence Unconstitutional Under The Eighth And Fourteenth Amendments ............................................... 980

CONCLUSION ..................................................... 984

Appendix A, Sentencing Charge, <u>State v. Stephens</u>

Appendix B, Sentencing Portion of Charge, <u>State v. Furman</u>

## TABLE OF CASES

Page

Andres v. United States, 333 U.S. 740 (1948) ...................... 977, 978
Arnold v. State, 236 Ga. 534, 224 S.E.2d 386 (1976) ................ 873, 976
Bachellar v. Maryland, 397 U.S. 564 (1970) ........................ 977
Bell v. Ohio, 438 U.S. 632 (1978) .................................. 982
Calton v. Utah, 130 U.S. 83 (1889) ................................. 981
Chenault v. Stynchcombe, 581 F.2d 444 (5th Cir. 1978) ............. 974, 976,
    983, 984,
    984
Coker v. Georgia, 433 U.S. 584 (1977) ............................. 969, 975
    981, 982
Cramer v. United States, 325 U.S. 1 (1945) ........................ 977
Eberheart v. Georgia, 433 U.S. 917 (1977) (per curiam) ............ 975
Furman v. Georgia, 408 U.S. 238 (1972) ............................ 969, 978,
    977, 983
Gardner v. Florida, 430 U.S. 349 (1977) ........................... 969, 974,
    976, 979,
    979, 984
Godfrey v. Georgia, cert. granted, ___ U.S. ___, 48 U.S.L.W. 3241
    (U.S. Octo. 9, 1979) (No. 79–6899) ............................ 976
Grayned v. Rockford, 408 U.S. 104 (1972) .......................... 978, 979
Green v. Georgia, ___ U.S. ___, 60 L.Ed.2d 738 (1979) ............. 980
Gregg v. Georgia, 428 U.S. 153 (1976) ............................. 974, 974,
    975, 978,
    979, 979,
    979, 979,
    980, 981,
    981, 982,
    982, 983,
    985
Gregory v. Chicago, 394 U.S. 111 (1969) ........................... 977
Hall v. State, 241 Ga. 252, 244 S.E.2d 833 (1978) ................. 982
Johnson v. Commonwealth, ___ Va. ___, 255 S.E.2d 525 (1975) ...... 982
Jurek v. Texas, 428 U.S. 262 (1972) ............................... 969, 976,
    984
Legare v. Georgia, 243 Ga. 744, ___ S.E.2d ___ (1979), petition for
    cert. filed, Sept. 20, 1979 (No. 79–5391) .................... 970
Lockett v. Ohio, 438 U.S. 586 (1978) .............................. 969, 976,
    977, 979,
    980, 982
McCaskill v. State, 344 So.2d 1276 (Fla.1977) ..................... 982
McGautha v. California, 402 U.S. 183 (1971) ....................... 982
Morgan v. Georgia, 240 Ga. 485, 232 S.E.2d 646 (1979), petition for
    reh'g filed, June 14, 1979 (No. 79–6140) ..................... 970
Papachristou v. City of Jacksonville, 405 U.S. 156 (1972) ......... 979
Presnell v. Georgia, 439 U.S. 14 (1978) ........................... 980
Proffitt v. Florida, 428 U.S. 240 (1976) .......................... 980, 982
(Harry) Roberts v. Louisiana, 431 U.S. 633 (1977) ................. 977
(Stanislas) Roberts v. Louisiana, 428 U.S. 325 (1976) ............. 969, 976,
    978
Ruffin v. Georgia, 243 Ga. 95, 252 S.E.2d 472 (1979), petition for
    cert. filed, May 15, 1979 (No. 78–6687) ...................... 970
Smith v. Estelle, 602 F.2d 694 (5th Cir. 1979) .................... 976, 980
Smith v. Gouven, 415 U.S. 566 (1974) .............................. 979

Page

Spivey v. Georgia, 241 Ga. 477, 246 S.E.2d 288 (1977), petition for
   cert. filed, Sept. 21, 1979 (No. 79–5395) ........................... 970
Stephens v. Georgia, 429 U.S. 986 (1976) ........................... 971
Stephens v. Hopper, 241 Ga. 596, 247 S.E.2d 92 (1978) ............. 971
Stephens v. State, 237 Ga. 259, 227 S.E.2d 261 (1976) ............. 971, 974,
   977
Street v. New York, 394 U.S. 576 (1969) ........................... 977
Stromberg v. California, 283 U.S. 350 (1931) ....................... 974, 980
Terminiello v. Chicago, 337 U.S. 1 (1949) ........................... 977
Thomas v. Collins, 323 U.S. 516 (1945) ............................. 974
Williams v. North Carolina, 317 U.S. 287 (1942) ................... 974
Woodson v. North Carolina, 428 U.S. 280 (1972) .................. 969, 976,
   978, 979,
   982, 984
Yates v. United States, 354 U.S. 298 (1957) ....................... 977

STATUTES

Ga.Code Ann. § 27–2534.1(b) ........................................ 973, 982
Ga.Code Ann. § 27–2534.1(b)(1) ..................................... 973, 976,
   976
Ga.Code Ann. § 27–2534.1(b)(7) ..................................... 976
Ga.Code Ann. § 27–2534.1(b)(9) ..................................... 976, 977
Ga.Code Ann. § 27–2537(c)(3) ....................................... 976

OTHER AUTHORITIES

ALI Model Penal Code § 201.6 ....................................... 982
Liebman & Shepard, Guiding Capital Sentencing Discretion Beyond
   the "Boiler Plate": Mental Disorder As a Mitigating Factor, 66
   Geo.L.J. 757 (1978) ............................................... 982

STATEMENT OF INTEREST OF *AMICUS CURIAE* NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.

The NAACP Legal Defense and Educational Fund, Inc. submits a brief *amicus curiae* in this case for the following reasons:

(1) The Fund is a non-profit corporation established to assist black citizens in securing their constitutional rights. In 1967, it undertook to represent all condemned defendants in the United States, regardless of race, for whom adequate representation could not otherwise be found. It has frequently represented condemned defendants before the Supreme Court of the United States. *E.g., Furman v. Georgia,* 408 U.S. 238 (1972); *Jurek v. Texas,* 428 U.S. 262 (1976); *Woodson v. North Carolina,* 428 U.S. 280 (1976); *Roberts v. Louisiana,* 428 U.S. 325 (1976); *Davis v. Georgia,* 429 U.S. 122 (1976); *Gardner v. Florida,* 430 U.S. 349 (1977); *Coker v. Georgia,* 433 U.S. 584 (1977); and *Lockett v. Ohio,* 438 U.S. 586 (1978).

(2) The Fund continues to provide legal assistance to indigent condemned prisoners of all races and is now involved as counsel in over one hundred death cases. It represents a substantial number of indigent death-sentenced inmates in Georgia, Florida and Texas who are at various stages of state and federal postconviction proceedings. Additionally, the Fund provides consultative assistance to attorneys representing a large number of other capital defendants within and without this Circuit.

(3) The Southern Prisoners' Defense Committee, which is of counsel on the

brief, provides legal assistance to indigent condemned prisoners throughout the South, consults with other attorneys representing dozens of capital inmates and provides information and educational materials on the defense of capital cases.

(4) This case involves several important constitutional issues present in the cases of over a dozen defendants in Georgia, including several represented by the Fund. For example, in four Georgia cases currently before the Supreme Court of the United States—*Morgan v. Georgia*, 240 Ga. 485, 232 S.E.2d 646 (1979), *petition for reh'g filed*, June 14, 1979 (No. 78–6140); *Ruffin v. Georgia*, 243 Ga. 95, 252 S.E.2d 472 (1979); *petition for cert. filed*, May 15, 1979 (No. 78–6687); *Legare v. Georgia*, 243 Ga. 744, 257 S.E.2d 247 (1979), *petition for cert. filed*, Sept. 20, 1979 (No. 79–5391); and *Spivey v. Georgia*, 241 Ga. 477, 246 S.E.2d 288 (1979), *petition for cert. filed*, Sept. 21, 1979 (No. 79–5395) condemned inmates have raised constitutional claims concerning the requisites of sentencing instructions on aggravating and mitigating circumstances in capital cases. This issue has also been raised in federal habeas corpus petitions now pending in district courts in Georgia. The Fund hopes that its brief *amicus curiae* might aid this Court in resolving the sentencing-instruction claim raised by appellant and briefed in summary fashion by both parties in this case.

### ISSUES PRESENTED [1]

1. Whether appellant's death sentence, imposed in part because of a jury finding of an aggravating circumstance which was subsequently held by the Georgia courts to

be unconstitutionally vague, violated the Eighth and Fourteenth Amendments?

2. Whether sentencing instructions to appellant's trial jury, which did not clearly instruct the jury about mitigating circumstances and their option to recommend against death even if aggravating circumstances were present, complied with the Eighth and Fourteenth Amendments?

### STATEMENT OF THE CASE

### I. COURSE OF PRIOR PROCEEDINGS

On October 17, 1974, appellant pleaded guilty in the Superior Court of Twiggs County, Georgia to two counts of burglary, three counts of armed robbery, one count of motor vehicle theft, and one count of kidnapping with bodily injury for his part in the abduction and murder of Roy Asbell.[2] He received life sentences for the armed robberies and the kidnapping. Appellant did not appeal those sentences.

Three months later, appellant was tried for the same underlying offense against Roy Asbell in the Superior Court of Bleckley County on an indictment charging murder. On January 21, 1975, he was convicted and sentenced to death.

Appellant appealed his conviction and sentence from Bleckley County to the Supreme Court of Georgia, which affirmed on July 14, 1976. *Stephens v. State*, 237 Ga. 259, 227 S.E.2d 261 (1976). Appellant's petition for certiorari to the Supreme Court of the United States was denied on November 29, 1976. *Stephens v. Georgia*, 429 U.S. 986 (1976).

---

**1.** This appeal also presents the following issues which, while meritorious, will not be canvassed in this brief in view of their treatment in the brief for appellant:

3. Whether, after appellant's conviction of kidnapping with homicide in one county, entered upon a guilty plea which under State law was legally and effectively also as a plea to felony murder his subsequent prosecution in another county under a different indictment for the murder of the same victim constituted double jeopardy forbidden by the Fifth and Fourteenth Amendments?

4. Whether appellant's death sentence for murder was properly affirmed on a record

which lacked the full transcript of the proceedings at trial?

**2.** The Twiggs County indictment charged in part that appellant "did unlawfully and with force and arms abduct and steal away Roy Asbell, a person, without lawful authority, and held Roy Asbell against his will and did physically abuse and did inflict and cause bodily injury to the body of Roy Asbell by beating, hitting and kicking Roy Asbell *and did threaten to kill Roy Asbell and then did kill Roy Asbell by shooting Roy Asbell."* (emphasis added)

Appellant filed a petition for a writ of habeas corpus in the Superior Court of Tattnall County on April 4, 1977. After an evidentiary hearing, the Superior Court on December 14, 1977 denied relief. The Supreme Court of Georgia affirmed on July 6, 1979, *Stephens v. Hopper*, 241 Ga. 596, 247 S.E.2d 92 (1978), and the Supreme Court of the United States denied a petition for certiorari on November 27, 1978. *Stephens v. Hopper*, 439 U.S. 991 (1978).

Appellant filed a federal petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia, Macon Division, on February 8, 1979. Respondent moved to dismiss the petition, and on May 11, 1979, the district court entered an order denying habeas corpus relief. This appeal followed.

## II. STATEMENT OF FACTS

On August 19, 1974, appellant Alpha Otis Stephens escaped from the Houston County jail where he was being held pending trial for a prior escape (Tr. T. 117, 214).[3] He travelled to Macon, Georgia, where he remained for several days. During this time, in the company of other companions, he took illegal drugs and allegedly committed three auto thefts, several burglaries and an armed robbery (Tr. T. 118–19).

During the morning of August 21, 1974, appellant and Claude Sampson,[4] after having ingested a quantity of illegal drugs, went to the home of one Charles Asbell in Twiggs County (Tr. T. 120, 216). Appellant and Sampson entered the Asbell home, which was unoccupied, by breaking the window of an exterior door. Once inside, the two men assembled a number of rifles and shotguns, as well as a .357 Magnum, which they found inside and carried the weapons to their car (Tr. T. 120, 217).

While they were loading the car, Charles Asbell's father, Roy Asbell, drove up in a Ford Ranchero, and called out, "Nigger, what are you doing in my house?" (Tr. T. 120, 217, 315). As appellant approached Asbell, who had apparently observed the guns in appellant's car, Asbell reached into his pocket and drew a .38 Derringer (Tr. T. 217, 315). Appellant kicked the gun away and wrestled Asbell to the ground.

Sampson and appellant, who were still under the influence of drugs, then drove Asbell in his own car to a field several miles from the house, across the Twiggs County line into Bleckley County. Appellant explained that he and Sampson intended to tie up Asbell in a vacant field, but that Asbell managed to escape and ran across the field to a deserted house (Tr. T. 121, 218, 316).

During his sentencing hearing, appellant testified that he urged Sampson to leave, but Sampson insisted "No, we had better get him" (Tr. T. 316). As the two approached the abandoned house, Asbell retreated through the front door. Sampson, who had stolen a .357 Magnum from the Asbell residence, went inside. Appellant, who remained on the front steps, heard two shots, after which Sampson walked out, saying "The man had a stick" (Tr. T. 316).[5]

A written statement obtained from appellant by police and marked as State's Exhibit 14 at trial gave a different account of the shooting. In that statement, appellant purportedly acknowledged direct responsibility, saying, "I shot him three or four times and ran" (Tr. T. 218; St.Ex. 14).[6]

---

3. Since *amicus* has not had access to the Record on Appeal, each reference to the transcript of the trial in the Superior Court of Bleckley County, held January 21–22, 1975, will be indicated by the abbreviation "Tr. T.".

4. Sampson is referred to throughout the trial by an alias, "Claude Kellog" (Tr. T. 215).

5. The State's evidence demonstrated that the day prior to Asbell's murder, appellant and Claude Sampson had robbed a gas station in Twiggs County. During the robbery, Sampson shot at one of the patrons. Appellant, who also had a weapon, took the woman outside the station and turned her loose unharmed (Tr. T. 215).

6. Medical evidence offered by the State at trial established that Asbell was shot only twice (Tr. T. 45–46). After a thorough search of the house, only one bullet was recovered by police (Tr. T. 52–55).

Appellant and Sampson then fled to Savannah, Georgia in Asbell's car, arriving later that evening. Appellant purchased drugs from a local dealer, checked into the Desoto Hilton under an assumed name (Tr. T. 110, 218), took drugs with a woman he contacted in Savannah, and took her home about 5:00 a.m. the following morning, August 22, 1974 (Tr. T. 162, 168–69, 317).

About 6:00 a.m., a Savannah patrolman found appellant asleep on a bench near a bus stop in possession of a weapon (Tr. T. 89–93). Appellant was arrested for being "drunk on the street," for carrying a concealed weapon, and for other weapons violations (Tr. T. 156).

Several hours after his arrest, appellant was interviewed by Detective John R. Goode, who took a number of oral and written statements from him during the morning and early afternoon of August 22, 1974 (Tr. T. 108–09, 113–14, 115–17, 127). Detective Goode acknowledged that when he spoke with appellant "it appeared to me that he had been on a pretty good drunk," but Goode denied that appellant was still intoxicated (Tr. T. 132). Goode also testified that during his interviews, appellant acted strangely:

"He was sitting there in our office and the gleam and glitter in his eyes was out of the ordinary.

\* \* \* \* \* \*

At this time—we couldn't control Stephens at this time at all.

Q. What do you mean, control him?

A. Well, sir, his reactions—he—his eyes the gleam and glitter in his eyes—it appeared that he was having illusions [sic] of grandeur or something. It was just like he was reacting the the [sic] crime and so forth. He was beginning to get violent, but fortunately we had him handcuffed and so forth. It was frightening to watch him when he was in this state of mind, the way he was explaining it to us." (Tr. T. 120–122)

At another point, Detective Goode described appellant as follows:

"[A]s he was sitting in the chair with his hands like this handcuffed to the table leg he was clenching his hands with the handcuffs on that the veins and so forth in his arms got real large so that the handcuffs were tight on his arms. His eyes were real glassy and fixed. He appeared to be a man who in my opinion was demented in some way. I asked him if the handcuffs were too tight and he didn't even hear me. He didn't seem to know that we were even in the room." (Tr. T. 150)

Appellant stated that he had taken "Purple Haze," a drug composed of acid or uppers, about an hour prior to his arrest, and that earlier during the evening he had smoked marijuana and drunk champagne and beer (Tr. T. 159, 162). He stated that he vomited repeatedly in his cell at the Savannah Police Station and requested medical attention, although none was provided (Tr. T. 172). Appellant recalled neither receiving any *Miranda* warnings from officers nor making the series of oral and written statements attributed to him (Tr. T. 162, 173). He specifically denied that the signature affixed to State's Exhibit 14 was his own (Tr. T. 173).[7]

At the opening of his trial, Hugh Lawson, one of the two attorneys appointed by the court to represent appellant, told the court that

"our defense here is handicapped by the fact that we are evidently altogether out of communication with the defendant himself. He will not communicate with us meaningfully and does not seem to respond meaningfully to any communication that we make to him." (Tr. T. 8)

The attorneys stated that they had attempted to speak with appellant on only two occasions prior to the trial, once at the Georgia State Prison in Reidsville, Georgia

---

**7.** The trial court eventually ruled that appellant's statements were voluntary, with a qualification that "[p]ossibly if the statements that were made were all made immediately upon

arrest I might find that intoxication and use of drugs would have something to do with it." (Tr. T. 177–78).

and the other at the time of appellant's commitment hearing in Cochran, Georgia (Tr. T. 10–11):

> "He did not communicate with us when we did try to communicate with him at Reidsville, and he did not communicate with us at the court house in Cochran, and he will not communicate with us today. I don't know what else to say or do about it." (Tr. T. 11)

The trial court, noting that it had given appellant an opportunity to obtain private counsel, urged appellant to cooperate with his lawyers, and resumed the trial (Tr. T. 13).[8]

Appellant was convicted of murder by the jury; no finding or special verdict was rendered on whether appellant or Claude Sampson had actually fired the shots which killed Roy Asbell.

During the sentencing phase of the trial, the State offered eight prior convictions (Tr. T. 299). These convictions were offered to prove the aggravating circumstances designated under Ga.Code Ann. § 27–2534.1(b)(1): the "offense of murder ... was committed by a person who had a substantial history of serious assaultive criminal convictions."[9] Under Georgia law, proof of at least one of the statutory aggravating circumstances is a prerequisite to the imposition of a capital sentence. The court admitted six of the eight prior convictions (Tr. T. 314).

In its brief sentencing charge, which is appended as Appendix A, the trial court instructed the jury that they were "autho-

rized to consider all of the evidence received in court throughout the trial," including "all facts and circumstances presented in extinuation [sic], mitigation and aggravation of punishment" (Tr. T. 320). The court went on to instruct that "[i]n all cases of Murder for which the death penalty may be authorized the jury shall consider any mitigating circumstances or aggravating circumstances *authorized by law*" (Tr. T. 321) (emphasis added).

In order to explain the law of aggravating circumstances, the court systematically enumerated three aggravating factors submitted to the jury: (i) that "the offense of Murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim;" (ii) that "the offense of Murder was committed by a person who had escaped from the lawful custody of a peace officer or a place of lawful confinement;" (iii) that the defendant had a "substantial history of serious assaultive criminal convictions," or "a prior record of conviction for a Capital felony" (Tr. T. 321). The court explained that "[u]nless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death;" and it told the jury that, if death were fixed, aggravating factors would have to be listed with the verdict (Tr. T. 321–22).

The court, however, did not define the term "mitigating circumstances." It did not identify any mitigating circumstances as supported by the evidence in the case.[10]

---

8. Later during the trial, the trial judge stated for the record that although when appellant had initially appeared before the court, the judge undertook to explain his rights to an attorney, the nature of the charge and his rights in general to him, Mr. Stephens would not respond to anything that I said to him at that time in the court room. He remained silent. The Court did not know precisely what to make of this, and through officers the Court inquired whether it might not be well to have psychiatric or other examination of Mr. Stephens, not knowing the nature of the problem, and it was brought to my attention that there were times when he was quite affable and talkative and other times when he would

not talk at all and that there did not seem to be any mental difficulties at all. It was at this point, and this had been just a matter of a few hours or at best a day or two, the Court made a decision ... to go ahead and appoint attorneys (Tr. T. 99).

9. In *Arnold v. State,* 236 Ga. 534, 224 S.E.2d 386 (1976), the Supreme Court of Georgia subsequently held this aggravating circumstance to be unconstitutionally vague.

10. Under Ga.Code Ann. § 27–2534.1(b), the trial judge is expressly required to "include in his instructions to the jury for it to consider, any mitigating circumstances ... otherwise autho-

It did not explain in any other way how mitigating circumstances were to be evaluated by the jury. Instead, the court stated only that "if you recommend mercy for the defendant this will result in imprisonment for life of the defendant. In such case it would not be necessary for you to recite any mitigating or aggravating circumstances as you may find...." (Tr. T. 322).

The jury did not find the crime to have been "outrageously wanton, vile or inhumane" but did find the other aggravating circumstances to have been present. It fixed appellant's sentence at death. On appeal, the Supreme Court of Georgia held that, though one of the two aggravating circumstances found by the jury—that involving "serious assaultive criminal conviction"—was unconstitutional and should not have been submitted to the jury "[i]n this case, the evidence supports the jury's findings of the other statutory aggravating circumstances, and consequently the sentence is not impaired." *Stephens v. State,* 237 Ga. 259, 227 S.E.2d 261, 263 (1976).

## SUMMARY OF ARGUMENT

The record in appellant's case contains significant federal constitutional issues which, inexplicably, were not raised below but which require corrective action by this Court. *Cf. Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978).

Appellant's jury was instructed by the trial court at the sentencing stage that it could consider an aggravating circumstance which was later held unconstitutionally vague. The jury not only considered, but specifically found this circumstance and one other to have been present, and sentenced petitioner to death.

A death sentence based in part upon an unconstitutionally vague aggravating circumstance flatly violates the settled rule against permitting a verdict to stand which may have rested in part upon an unconstitutional statute. *Stromberg v. California,* 283 U.S. 350 (1931). Appellant's sentence also fails to satisfy the demand of *Gregg v.*

*Georgia,* 428 U.S. 153 (1976) and *Gardner v. Florida,* 430 U.S. 349 (1977) for reliability in capital sentencing since there is no way of determining the effect of arbitrary factors upon the jury's deliberations and sentence. The Constitution does not permit a person's life to be taken under a cloud of uncertainty about the basis for the jury's decision.

The trial court did not clearly instruct appellant's jury on its responsibility to consider mitigating circumstances in sentencing appellant, nor did it inform the jury of its option to recommend a sentence of life for appellant even if aggravating circumstances were found in the case. Specifically, the trial court never defined the "mitigating circumstances," never offered examples of mitigating circumstances and, contrary to state law, did not direct the jury's attention to specific mitigating circumstances suggested by the evidence. Moreover, the trial court never explained the relationship between aggravating and mitigating circumstances, instead suggesting to the jury that, if aggravating circumstances were found, a death sentence should follow automatically.

Appellant's sentencing instructions therefore violated the Supreme Court's express assumption in *Gregg v. Georgia,* 428 U.S. 153, 197 (1976) that under Georgia's new capital statutes, the jury's attention in deliberations on sentence would be focused by the trial court on the characteristics of the defendant. In the absence of such sentencing instructions, appellant's death sentence cannot stand.

## ARGUMENT

*Introduction*

While *amicus* believes that the issues briefed by appellant and those that we brief in detail below suffice to establish the invalidity of appellant's death sentence, this appeal has an extremely troubling feature which we feel obliged to call to the Court's attention at the outset. Several federal constitutional issues apparent on

rized by law ... which may be supported by the evidence."

the face of the state court record have not been presented by appellant's counsel below or in this Court.[11]

One such issue, for example, requires no elaborate examination of either fact or law; and there appears no reason why it should not have been raised below. Appellant's death sentence stands on a record on which no factual determination was made that the life of the victim "ha[d] been taken deliberately by the [appellant]," *Gregg v. Georgia,* 428 U.S. 153, 187 (1976).

While the Supreme Court in *Gregg* sustained the constitutionality of the penalty of death, it expressly noted that the penalty might nevertheless be constitutionally forbidden if it were "disproportionate in relation to the crime for which it [was] imposed." *Gregg v. Georgia, supra,* 428 U.S. at 187. *Gregg* and its companion cases upheld death sentences as not excessive or disproportionate only "when a life has been taken deliberately by the offender." *Id.* Subsequently, in *Coker v. Georgia,* 433 U.S. 584 (1977), the Court struck down as disproportionate a death sentence imposed for the crime of rape, which, the Court stated, "does [not] involve the unjustified taking of human life." *Coker v. Georgia, supra,* 433 U.S. at 598. The logic of *Coker* plainly applies to any non-fatal felony. *See Eberheart v. Georgia,* 433 U.S. 917 (1977) (*per curiam*) (rape and kidnapping).

The question presented by appellant's case is whether a death sentence may be imposed for what may have been no more than accessorial liability.[12] If appellant in fact did not participate in the death of the victim, made no decision to kill, or indeed attempted to dissuade his companion from murder, the death penalty would be constitutionally disproportionate and excessive. A defendant who is an accomplice to the murder committed by a co-felon has personal culpability that is no greater than that in *Coker.* If appellant could not be sentenced to death for the felonies in which he participated—here burglary, armed robbery, kidnapping and motor vehicle theft— it seems inconceivable that he could be constitutionally sentenced to death simply because his companion committed a homicide during the felony.

While this case, unlike *Coker,* involves a death resulting from the felony, it is settled that the infliction of capital punishment on the basis of the crime alone, without assessing the offender's individual culpability, ignores considerations that are "a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina,* 428 U.S. 280, 304 (1976) (plurality opinion); *see (Harry) Roberts v. Louisiana,* 431 U.S. 633, 636–37 (1977) (*per curiam*); *(Stanislaus) Roberts v. Louisiana,* 428 U.S. 325, 332–34 (1976) (plurality opinion). The plain import of *Woodson* and the two *Roberts* cases is that capital sentencing must depend upon an examination of the individual culpability of the offender; and if his culpability is no greater than Coker's, infliction of the death penalty on him would be both disproportionate under *Coker* and would affront the

**11.** In addition to the constitutional claim we discuss in the text, issues presented by the trial record include: (i) whether in light of appellant's abnormal silence at arraignment before the trial court and his generally aberrant behavior, the trial court erred in failing to order a *Drope/Pate* hearing on appellant's competence to stand trial; (ii) whether appellant's trial counsel, however otherwise competent and well-intentioned, could have rendered effective assistance to appellant in light of their confessed inability to communicate with him; and (iii) whether, in light of appellant's alcohol and drug use and his "demented" behavior on the day he was arrested, his oral and written statements to Savannah police were voluntary or were given after a knowing, intelligent waiver of his *Miranda* rights.

**12.** Defense counsel, who confessed at the outset of trial their utter inability to communicate with appellant, did not present any evidence of his accessorial role during the guilt-innocence phase of the trial. The jury, which heard only the State's evidence ascribing full responsibility to appellant, was not asked to make a specific finding on appellant's actual role in the crime.

During the sentencing hearing, however, when appellant himself took the stand, the conflict in evidence developed. The trial court took no steps in its sentencing instructions to obtain a jury resolution of this crucial issue.

Eighth Amendment's command that "any decision to impose the death sentence be, and appear to be, based on reason rather than caprice...." *Gardner v. Florida,* 430 U.S. 349, 358 (1977) (plurality opinion).[13]

Under *Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978), a remand to the district court on this issue for exhaustion of state remedies is appropriate. At that time, *amicus* submits, appellant's death sentence must be vacated and the case remanded to the trial court for a jury finding on the extent of appellant's personal responsibility for Asbell's death.

### I

APPELLANT'S DEATH SENTENCE, WHICH WAS BASED IN PART ON AN UNCONSTITUTIONALLY VAGUE AGGRAVATING CIRCUMSTANCE, VIOLATES THE EIGHTH AND FOURTEENTH AMENDMENTS.

In determining appellant's sentence, the trial jury was instructed by the court to consider the following aggravating circumstances: (i) that the murder was committed by a person with a prior record of conviction for a capital felony or a substantial history of serious assaultive criminal convictions; [14] (ii) that the murder was committed by a person who had escaped from the lawful custody of a peace officer or place of confinement; [15] and (iii) that the offense of murder was outrageously or wantonly vile, horrible or inhuman [16] (Tr. T. 321). The jury found the first two of these circumstances to have been present but rejected the last.

Subsequent to the imposition of the petition's death sentence, the Georgia Supreme Court concluded that "the portion of Code Ann. § 27–2534.1(b)(1), which allows for the death penalty where a murder [is] committed by a person who has substantial history of serious assaultive convictions is unconstitutional and, thereby, unenforceable." *Arnold v. State,* 236 Ga. 534, 224 S.E.2d 386, 392 (1976).[17] Notwithstanding the clear unconstitutionality of one of the predicates for the jury's verdict in appellant's case, the Georgia Supreme Court affirmed his death sentence on appeal, concluding that "the evidence supports the jury's findings of the other statutory aggravating circumstances, and consequently, the sentence is not impaired." *Stephens v. State, supra,* 237 S.E.2d at 263.

Appellant alleged below that the death sentence had been based in part on an unconstitutional aggravating circumstance.

---

**13.** The Supreme Court's ultimate disposition of this question has been clearly implied in *Lockett v. Ohio,* 438 U.S. 586 (1978). Without directly reaching the question, both the plurality and Justice Blackmun identified a defendant's personal lack of intention to cause death as a crucial mitigating factor. *Lockett v. Ohio, supra,* 438 U.S. at 607–08; *id.* at 616. Mr. Justice White went further; directly addressing the issue, he asserted that "death may not be inflicted for killings consistent with the Eighth Amendment without a finding that the defendant engaged in conduct with the conscious purpose of producing death...." *Id.* at 628.

**14.** This instruction was derived from Ga.Code Ann. § 27–2534.1(b)(1): "The offense of murder, rape, armed robbery, or kidnapping was committed by a person with a prior record of conviction for a capital felony, or the offense of murder was committed by a person who has a substantial history of serious assaultive criminal convictions."

**15.** This instruction was derived from Ga.Code Ann. § 27–2534.1(b)(9): "The offense of murder was committed by a person in, or who has escaped from, the lawful custody of a peace officer or place of lawful confinement."

**16.** This instruction was derived from Ga.Code Ann. § 27–2534.1(b)(7): "The offense of murder, rape, armed robbery or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." The jury did not enter a finding regarding this circumstance. The United States Supreme Court has recently granted certiorari to determine whether the Georgia Supreme Court's construction of this aggravating circumstance violates the Eighth and Fourteenth Amendments. *Godfrey v. Georgia, cert. granted,* —— U.S. ——, 48 U.S.L.W. 3241 (U.S., Oct. 9, 1979) (No. 79–6899).

**17.** Appellant's death sentence was imposed on January 21, 1975; the *Arnold* decision was filed over fourteen months later on April 6, 1976.

Without directly addressing this issue, the district court denied the petition.[18]

The disposition of this issue by the Georgia Supreme Court and by the district court below violates a fundamental principle established by repeated decisions of the United States Supreme Court: that whenever a jury has been instructed to consider several grounds for conviction, one of which proves unconstitutional, if a reviewing court is thereafter unable to determine from the record whether the jury relied upon the unconstitutional ground, the verdict must be set aside. *Stromberg v. California*, 283 U.S. 359, 367–68 (1931); *Williams v. North Carolina*, 317 U.S. 287, 291–92 (1942); *Thomas v. Collins*, 323 U.S. 516, 528–29 (1945); *Cramer v. United States*, 325 U.S. 1, 36 n. 45 (1945); *Terminiello v. Chicago*, 337 U.S. 1, 5 (1949); *Yates v. United States*, 354 U.S. 298, 311–12 (1957); *Gregory v. Chicago*, 394 U.S. 111, 113 (1969); *Street v. New York*, 394 U.S. 576, 585–88 (1969); *Bachellar v. Maryland*, 397 U.S. 564, 570–71 (1970). As the Court explained in *Street v. New York, supra*, 394 U.S. at 587–88:

"[E]ven assuming that the record precludes the inference that appellant's conviction might have been based *solely* on [the unconstitutional ground], we are still bound to reverse if the conviction could have been based upon *both* [the unconstitutional] and [the constitutional ground].

\* \* \* \* \* \*

[U]nless the record negates the possibility that the conviction was based on both ... *Thomas* [*v. Collins, supra* ] dictates that '[t]he judgment .. must be affirmed as to both or as to neither,' [for otherwise] ... there is an unacceptable danger that the trier of fact will have regarded the two ... as 'intertwined' and have rested the conviction on both together."

This settled principle of law is applicable with particular force in the present case. Appellant's death sentence has been permitted to stand upon a verdict which no court can satisfactorily determine not to have been decisively affected by an unconstitutional statutory aggravating circumstance. Several factors contribute to the unique harm such a result works in appellant's case.

First, the trial court's instructions never advised the jury that its sentence of death had to be unanimously based on any single aggravating circumstance (Tr. T. 320–22). Instead, the jury was merely instructed that in order to return a death verdict it was required to:

"designate in writing, signed by the foreman, the aggravating circumstances or circumstance which you have found to be proven beyond a reasonable doubt. Unless one or more of these statutory aggravating circumstances are proven, beyond a reasonable doubt you will not be authorized to fix punishment at death." [19]

Although these instructions required proof beyond a reasonable doubt, they did not expressly call for jury unanimity on the circumstances which would warrant a sentence of death. As a result, four of the jury may well have voted for a death sentence on the basis of one aggravating circumstance, four because of two of the aggravating circumstances and the remainder only because all three were present. If, indeed, this were the breakdown of the jurors, then there would not have unanimity for a death sentence without reliance upon the unconstitutionally vague aggravating circumstance.

There is simply no way of knowing the answer in light of the jury's general verdict of death. The district court's effort to find certainty where none exists is contrary to the clear mandate of the United States

---

18. The pertinent portion of the district court's opinion states: "The jury found beyond a reasonable doubt two statutory aggravating circumstances that the murder was committed by a person with a prior record for a conviction of a capital felony, Ga.Code Ann. § 27–2534.1(b)(1), and by a person who had escaped from lawful custody of a police officer. Ga.Code Ann.

§ 27–2534.1(b)(9). These findings are supported by the evidence and either finding is grounds for the imposition of the death sentence." (Opinion, at 5).

19. The full sentencing charge is annexed as Appendix A.

Supreme Court that "[i]n death cases doubts ... should be resolved in favor of the accused." *Andres v. United States*, 333 U.S. 740, 752 (1948).

Second, even if unanimity on one of the valid aggravating circumstances could be divined from the general verdict, it would not in itself sustain the jury's verdict. The jury of necessity had the authority under both Georgia law and under the Constitution (as *amicus* will demonstrate in Section II, *infra*) to return a life sentence even if it found statutory aggravating circumstances to exist. There is therefore a real risk that the trial court's inclusion of the unconstitutional aggravating circumstance in its instructions led the jury to impose a death sentence which, in the absence of this factor, it would not have considered appropriate. "When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Lockett v. Ohio, supra,* 438 U.S. at 605.

The Georgia Supreme Court (and the district court) ignored this risk, holding that since one valid aggravating circumstance was present, appellant's death sentence was proper. This principle of appellate review itself violates *Lockett v. Ohio,* for it amounts to a conclusive presumption that if a jury has found one valid aggravating circumstance, death must be imposed, despite the fact that the jury, had it not been instructed to consider the unconstitutional circumstance, might itself have chosen *not* to impose a death sentence. As *Woodson v. North Carolina,* 428 U.S. 280 (1976) and *Roberts v. Louisiana,* 428 U.S. 325 (1976) establish, a mandatory death sentence which "fail[s] to allow *the particularized consideration of relevant aspects* of the character and record of each convicted defendant before the imposition upon him of a sentence of death," *Woodson v. North Carolina, supra,* 428 U.S. at 303, (emphasis added) is unconstitutional. The Georgia Supreme Court's automatic affirmance of appellant's sentence because of the pres-

ence of a valid aggravating circumstance denies to appellant any jury consideration of those aggravating and mitigating factors—and only those factors—which should have been before them, replacing the jury's delicate balancing of factors with an inflexible, *per se* rule.

Third, the United States Supreme Court sustained the Georgia capital statute in *Gregg v. Georgia,* 428 U.S. 153 (1976), only on the assumption that the Georgia Supreme Court would review each sentence of death and determine "whether it was imposed under the influence of passion, prejudice, *or any other arbitrary factor,*" *Gregg v. Georgia, supra,* 428 U.S. at 204; *see id.* at 167, 198, 223–24.[20] Since in this case the jury indisputably was instructed upon and found an unconstitutionally vague aggravating circumstance, and since the presence of such a factor injected a degree of impermissible arbitrariness into the proceeding, *see Grayned v. Rockford,* 408 U.S. 104, 109 (1972); *Furman v. Georgia,* 408 U.S. 238 (1972), it would appear to follow inexorably that appellant's death sentence was "imposed under the influence of ... [an] arbitrary factor."

There is a fourth reason why the *Stromberg* violation is especially egregious in this case. The underlying flaw in the capital statutes condemned in *Furman* was that they permitted juries to impose capital sentences in an arbitrary and capricious manner, without any consistent or evenhanded application.

In order for a capital statute to comply with *Furman v. Georgia,* 408 U.S. 238 (1972), the Supreme Court has insisted that it must provide a rational, consistent and reliable process for determining whether the death sentence should be imposed in a particular case. *See, e.g., Gregg v. Georgia, supra,* 428 U.S. at 188–89; *Woodson v. North Carolina,* 428 U.S. 280, 304 (1976); *Proffitt v. Florida,* 428 U.S. 242, 259–60; *Jurek v. Texas,* 428 U.S. 262, 276 (1978); *Lockett v. Ohio, supra,* 438 U.S. at 601.

---

**20.** Ga.Code Ann. § 27–2537(c)(3) requires the Georgia Supreme Court:

"With regard to the sentence ... to determine:
(1) Whether the sentence of death was im-

posed under the influence of passion, prejudice, or any other arbitrary factor."

As the plurality explained in *Gardner v. Florida*, 430 U.S. 349, 358 (1977): "It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice and emotion".[21]

To ensure that capital sentencing decisions are reached in a rational and consistent manner, the Supreme Court has emphasized that the discretion afforded a sentencing body "must be suitably directed and limited." *Gregg v. Georgia, supra*, 428 U.S. at 153.

However, the rationality and reliability of a capital sentencing system are substantially, if not wholly, undermined when, as here, the jury has been instructed on and has relied upon an unconstitutionally vague aggravating circumstance in reaching its decision to impose the death penalty.[22] Such an instruction removes the linchpin of a fair sentencing system, for there is a fundamental contradiction between the Supreme Court's requirement of guided discretion in death sentence proceedings and a process that would permit the jury to consider an unconstitutionally vague aggravating circumstance. The whole purpose of providing adequate guidance to the jury in the form of instructions on specific aggravating circumstances is to ensure that "the discretion to be exercised is controlled by clear and objective standards so as to produce nondiscriminatory application [citation omitted]" *Gregg v. Georgia, supra*, 428 U.S. at 198.

Rather than furthering these goals, however, a vague statute virtually ensures that they will not be met. A constitutionally imprecise statute does not provide any readily ascertainable standard, or even minimal objective guidelines, for the exercise by a jury of sentencing discretion. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972).

Instead of producing "non-discriminatory application," a vague standard invites the decisionmaker to engage in arbitrary and capricious determinations, since it "impermissibly delegates basic policy matters to policemen, judges and juries for resolution on an *ad hoc* and subjective basis." *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1971). Furthermore, the danger of arbitrary application of a vague standard is substantially increased when a jury is involved. "Since the members of a jury will have had little, if any, previous experience in sentencing they are unlikely to be skilled in dealing with the information they are given" *Gregg v. Georgia, supra*, 428 U.S. at 192.

In *Smith v. Goguen*, 415 U.S. 566 (1974), the Supreme Court acknowledged that, perhaps the greatest evil of any overly vague statute is that it "allows policemen, prosecutors and juries to pursue their personal predilections," *id.* at 575. The Court explained that by striking down vague legislation it was enforcing the "requirement that a legislature establish minimum standards to govern law enforcement." *Id.* at 374. It is precisely the unguided "personal predilections" of jurors which the Supreme Court condemned in *Furman*.

Moreover, the difficulties inherent in an unconstitutionally vague aggravating circumstance cannot be cured by the presence of other, more precise factors in the sentencing decision. Since any impermissibly vague aggravating circumstance itself "fails adequately to channel the sentencing decision patterns of juries," *Gregg v. Georgia, supra*, 428 U.S. at 195, a jury which considers such a factor in its determination to impose a death sentence is no longer exercising the guided discretion required

---

**21.** This Court has recently noted that the principle of *Gardner* appears to be derived from both the Eighth Amendment and the due process clause of the Fourteenth Amendment. *Smith v. Estelle*, 602 F.2d 694, 698 n. 4 (5th Cir.1979).

**22.** The jury was not only instructed that a "substantial history of serious assaultive criminal convictions" was a permissible aggravating circumstance under Georgia law; it was presented by the State with proof of six prior convictions meant to establish such a history (Tr. T. 314). Those prior convictions, which would not otherwise have been before the jury for its deliberations, indisputably had an impact on the jury, which expressly found the unlawful circumstance to have been proven.

by *Furman*. It would be blinking at reality for a reviewing court to regard appellant's death sentence under these circumstances as an act of controlled discretion merely because other permissible standards might also have been considered by the sentencing authority. Clearly, such standards cannot *remove* the element of arbitrary and capricious action which the Supreme Court has forbidden.

Finally, in considering the effect of the *Stromberg* violation, this Court must share the special concern for procedural fairness and reliability which the Supreme Court has repeatedly called for in capital cases. "When a defendant's life is at stake, the Court has been particularly sensitive to ensure that every safeguard is observed." *Gregg v. Georgia, supra,* 428 U.S. at 187. *See also Gardner v. Florida, supra,* 430 U.S. at 357; *Presnell v. Georgia,* 439 U.S. 14 (1978); *Green v. Georgia,* — U.S. —, 60 L.Ed.2d 738 (1979); *Smith v. Estelle,* 602 F.2d 694, 698 (5th Cir.1979). "The qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett v. Ohio, supra,* 438 U.S. at 604.

Reviewed under the strict standards of fairness required in death cases, appellant's capital sentence must be vacated.

## II

THE TRIAL COURT'S FAILURE ADEQUATELY TO INSTRUCT APPELLANT'S JURY CONCERNING ITS SENTENCING RESPONSIBILITIES UNDER GA.CODE ANN. § 27–2534.-1(b)—ESPECIALLY AS TO THE NATURE AND SIGNIFICANCE OF MITIGATING CIRCUMSTANCES AND THE JURY'S POWER TO IMPOSE A LIFE SENTENCE DESPITE A FINDING OF AGGRAVATING CIRCUMSTANCES—RENDERS APPELLANT'S DEATH SENTENCE UNCONSTITUTIONAL UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS.

In his federal petition for a writ of habeas corpus, appellant alleged that the trial court's sentencing instructions to his trial jury were constitutionally inadequate and therefore, that his death sentence must be reversed. The district court summarily rejected the claim, stating that

> "[t]he United States Supreme Court has upheld Georgia's statutory scheme for the imposition of the death sentence against a constitutional attack under the Eighth and Fourteenth Amendments, *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). All the procedures set forth in these statutes were observed in this case." (Opinion, at 5).

The district court's opinion is clearly in error, both as a matter of law and as a matter of fact. The court overlooks the Supreme Court's extraordinary emphasis in *Gregg* on the need for careful instructions to guide jury deliberations in capital cases. Moreover, it ignores at least four critical deficiencies of the sentencing charge in appellant's case.

A. *The Supreme Court's Insistence on 'Guided Discretion' in Capital Sentencing*

In *Furman v. Georgia,* 408 U.S. 238 (1972), the Supreme Court struck down Georgia's prior capital statute because it permitted juries arbitrarily to decide whether or not to impose a death sentence without benefit of legislative guidance. By giving jurors unfettered sentencing discretion, that statute permitted "[l]egislative 'policy' [to be] ... defined not by what is legislatively authorized but by what juries and judges do in exercising the discretion so regularly conferred upon them." *Furman v. Georgia, supra,* 408 U.S. at 314 (White, J. concurring).

Four years later, in *Gregg v. Georgia,* 428 U.S. 153 (1976), the Supreme Court sustained Georgia's present statute, in large part because of its carefully redesigned procedures meant to guide the jury in sentencing decisions. The Court in *Gregg* traced the aggravating factors es-

tablished by the statute and then specifically noted that "[i]n the assessment of the appropriate sentence to be imposed the judge is ... required ... to include in his instructions to the jury 'any mitigating circumstances....'" *Gregg v. Georgia, supra,* 428 U.S. at 164 (Stewart, Powell, Stevens, JJ.).

The Court concluded:

"These procedures require the jury to consider the circumstances of the crime and the criminal before it recommends sentence. No longer can a Georgia jury do as Furman's jury did: reach a finding of the defendant's guilt and then, without guidance or direction, decide whether he should live or die. Instead ... the jury's attention is focused on the characteristics of the person who committed the crime: Does he have a record of prior convictions for capital offenses? Are there any special facts about this defendant that mitigate against imposing capital punishment (*e.g.,* his youth, the extent of his cooperation with the police, his emotional state at the time of the crime). As a result, while some jury discretion still exists, 'the discretion to be exercised is controlled by clear and objective standards so as to produce non-discriminatory application.'" (*Id.* at 197–98)[23]

The Court's emphasis on careful sentencing instructions in capital cases is not new. Nearly a century ago, in *Calton v. Utah,* 130 U.S. 83 (1889), the Supreme Court reversed a death sentence because the trial court's instructions had failed clearly to inform the jury of its right to recommend a life sentence. The Court insisted that accurate instructions were "fundamental" in a

capital case. And in *Andres v. United States,* 333 U.S. 740, 752 (1948), the Court reversed a death sentence because of a critical ambiguity in the trial court's sentencing instructions, warning that "[i]n death cases doubts such as those presented here should be resolved in favor of the accused." As the Court reiterated in *Gregg,* it is "quite simply a hallmark of our legal system that juries be carefully and adequately guided in their deliberations." *Gregg v. Georgia, supra,* 428 U.S. at 193.

**B. *The Deficiencies of the Sentencing Charge in Appellant's Case***

The trial court's sentencing instructions in appellant's case violated *Furman* and *Gregg* in at least four respects. First, the instructions did not define "mitigating circumstances" for the benefit of the jury, much less explain to the jury that it was to undertake a "particularized consideration of relevant aspects of the character and record of each convicted defendant." *Woodson v. North Carolina,* 428 U.S. 280, 302, 303 (Stewart, Powell, Stevens, JJ.). The three aggravating circumstances asserted by the State were each spelled out in detail by the trial court. However, though the jury was briefly informed that it could "consider any mitigating circumstances ... authorized by law," it was given not the slightest clue what mitigating circumstances were "authorized" under the law of Georgia. Neither a definition of the term "mitigating"[24] nor any examples of mitigating circumstances were provided to guide the jury's deliberations. The subject was simply not covered.

---

**23.** In his concurring opinion, Mr. Justice White also emphasized the importance of the new sentencing procedures, especially those establishing the relation between aggravating and mitigating factors: "Having found an aggravating circumstance ... the jury is not required to impose the death penalty. Instead, it is merely authorized to impose it after considering evidence of 'any mitigating circumstances ...'" *Gregg v. Georgia, supra,* 428 U.S. at 211 (White, Burger & Rehnquist, JJ. concurring).

The Court again underlined its concern with capital sentencing instructions on mitigating cir-

cumstances in *Coker v. Georgia,* 438 U.S. 584, 589 (1977), expressly noting that the trial court there had "instructed, pursuant to statute, that even if aggravating circumstances were present, the death penalty need not be imposed if the jury found they were outweighed by mitigating circumstances...."

**24.** It is not implausible to suggest that some members of the jury "who may never before have made a sentencing decision," *Gregg v. Georgia, supra,* 428 U.S. at 190, might not even have understood the meaning of the word.

Second, while Ga.Code Ann. § 27–2534.-1(b) explicitly requires the judge to "include in his instructions to the jury for it to consider, any mitigating circumstances ... otherwise authorized by law," the trial court here utterly failed to do so, although several possible mitigating factors are obvious from even a brief review of the record.

For example, the testimony of the State's own witness, Detective Goode, strongly suggested that appellant might have been mentally "demented" or otherwise psychologically unbalanced at the time the crime was committed. Diminished mental capacity is widely recognized as a mitigating factor in capital cases which should have been charged in this case. *See* Liebman & Shepard, *Guiding Capital Sentencing Discretion Beyond the "Boiler Plate": Mental Disorder as a Mitigating Factor,* 66 Geo.L.J. 757 (1978).[25]

Moreover, appellant testified during his sentencing hearing that his companion, not he, fired the shots which killed Roy Asbell. If believed by the jury, this circumstance would have established another widely recognized mitigating factor. *See, e.g., Lockett v. Ohio,* 438 U.S. 586, 608 (1978) (plurality opinion); *id.* at 615–16 (Blackmun, J., concurring); *id.* at 624–25, 627–28 (White, J., concurring); *McCaskill v. State,* 344 So.2d 1276 (Fla.1977); *Hall v. State,* 241

Ga. 252, 244 S.E.2d 833, 838–39 (1978); *Johnson v. Commonwealth,* 220 Va. 146, 255 S.E.2d 525 (1979).[26]

Furthermore, unrefuted evidence demonstrated that appellant had been using drugs for several days prior to the crime and was, in appellant's words "pretty high" while the crime was taking place. In *Harry Roberts v. Louisiana,* 431 U.S. 633, 637 (1977) (*per curiam* ), the Supreme Court specifically mentioned "the influence of drugs" as an example of a mitigating factor which a capital jury should consider. *See Bell v. Ohio,* 438 U.S. 632, 641–42 (1978).

The trial court's instructions were deficient in a third important respect as well. The court provided the jury with no guidance on the proper relation between aggravating and mitigating factors. *Cf. Coker v. Georgia, supra,* 433 U.S. at 589–90. ("The [trial] court also instructed pursuant to statute, that even if aggravating circumstances were present, the death penalty need not be imposed if the jury found they were outweighed by mitigating circumstances....") No such instruction was given here. By contrast, under the ALI Model Penal Code § 201.6 referred to in *Gregg v. Georgia, supra,* 428 U.S. at 193, and under the Florida statute approved in *Proffitt v. Florida,* 428 U.S. 240, 248–51,

**25.** Today, of 37 American jurisdictions retaining the death penalty, 27 specify that the sentencer must give mitigating consideration to evidence of the defendant's mental or emotional disturbance, or of impairment of his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law as a result of mental disease or defect. Ala. Code Tit. 13, §§ 13–11–7(2) & (6) (1975); Ariz. Rev.Stat.Ann. § 13–703(G)(1) (1978); Ark.Stat. Ann. §§ 41–1304(1) & (3) (1977); Cal.Penal Code Ann. §§ 190.3(d) & (h) (Supp.1979); Conn. Stat.Ann. § 53a–46a(f)(2) (Supp.1979); Fla.Stat. Ann. §§ 921.141(6)(b) & (f) (Supp.1979); Ill. Stat.Ann. ch. 38, § 9–1(c)(2) (Supp.1979); Ind. Stat.Ann. §§ 35–50–2–9(c)(2) & (6) (1979); Ky. Rev.Stat. §§ 532.025(2)(b)(2) & (7) (Supp.1978); La.Code Crim.Proc.Ann., Art. 905.5(b) & (e) (Supp.1979); Md.Code Ann., Art. 27, § 413(g)(4) (Supp.1978); Miss.Code Ann. §§ 99–19–101(6)(b) & (f) (Supp.1978); Mo.Stat.Ann. §§ 565.012(3)(2) & (6) (Supp.1979); Mont.Code Ann. §§ 46–18–304(2) & (4) (1978); Neb.Rev.

Stat. §§ 28–2523(2)(c) & (g) (Supp.1974); Nev. Rev.Stat. § 200.035(2) (1977); N.H.Rev.Stat. Ann. §§ 630:5 II(b)(2) & (4) (Supp.1977); N.M. Stat.Ann. §§ 31–18–14(7)(C) & (D) (added by 1979 Laws of N.M. ch. 150, §§ 7(C) & (D), eff. July 1, 1979); N.C.Gen.Stat. §§ 15A–2000(f)(2) & (6) (1978); Pa.Consol.Stat.Tit. 18, §§ 1311(e)(2) & (3) (as amended by Act. No. 1978–141, 1978 Purdon's Pa.Leg.Svc. 607); S.C. Code §§ 16–3–20(b)(2) & (6) (Supp.1978); Tenn. Code Ann. §§ 39–2404(j)(2) & (8) (Supp.1978); Utah Code Ann. §§ 76–3–207(1)(b) & (d) (1978); Va.Code Ann. §§ 19.2–264.4(B)(ii) & (iv) (Supp. 1978); Wash.Rev.Code Ann. §§ 9A.32.045(2)(b) & (f) (Supp.1978); Wyo.Stat. §§ 6–54.2(j)(ii)(vi) (added by 1977 Wyo.Sess.Laws ch. 122); 49 U.S.C. Ann. § 1473(6)(B) (1976).

**26.** We have earlier argued that this factor is more than a relevant mitigating circumstance; indeed, that it requires reversal of appellant's *death sentence as excessive and disproportion-ate.*

258 (1976), the court is required to instruct the jury concerning its role in evaluating these factors.

"A jury of people who may never before have made a sentencing decision," *Gregg v. Georgia, supra,* 428 U.S. at 190, cannot be expected to intuit their proper role in evaluating complex sentencing concepts (which Mr. Justice Harlan, as recently as 1971 in *McGautha v. California,* 402 U.S. 183, 204 (1971) predicted would be "beyond present human ability") without some guidance from the Court. Here there was none.

Fourth and finally, the trial court here did not expressly inform the jury that, even if it found aggravating circumstances, it could nevertheless impose a life sentence. By both the structure and language of its charge, the court strongly implied that a death sentence followed automatically when an aggravating circumstances was found. After reciting three aggravating circumstances alleged by the State, the court instructed the jury as follows:

"If the jury verdict on sentencing fixes the punishment at death by electrocution, you shall designate in writing, signed by the foreman, the aggravating circumstance or circumstances which you found to have been proven beyond a reasonable doubt. Unless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death. If you fix punishment at death by electrocution you would recite in the exact words which I have given you the one or more circumstances you found to be proven beyond a reasonable doubt." (Tr. T. 321–22)

It would have been natural for a juror to conclude from the court's instruction that the deciding factor in fixing appellant's sentence was whether an aggravating circumstance could be found to have been proved.

What the trial court *did* tell the jury was that it could "recommend mercy for the defendant [which] will result in imprisonment for life of the defendant." This "mercy charge," perhaps more than any

other feature of the trial court's instructions, betrays its overall pre-*Gregg* character. In fact, in the *Furman* case, the trial court instructed the jury on its sentencing responsibilities in language strikingly similar to that employed by the trial court in this case:

"If you find the defendant guilty of murder and in the exercise of the discretion which is left you by the law you should recommend mercy, then the form of your verdict would be, 'We, the jury find the defendant guilty and recommend mercy.' That form of verdict would carry as the punishment imprisonment in the penitentiary for life."

(A copy of the sentencing portion of the charge in *State v. Furman* is annexed as Exhibit B.)

The Supreme Court in *Furman* condemned precisely this relinquishment of the defendant's fate to the unfettered "mercy" of the jury. "*Furman* mandate[d] that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably limited so as to minimize the risk of wholly arbitrary and capricious action." *Gregg v. Georgia, supra,* 428 U.S. at 189.

If the statutory changes required by *Furman* and *Gregg* are more than cosmetic, then surely a sentencing charge which, as here, perpetuates the deficiencies identified in *Furman* cannot stand. This Court, in *Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir.1978), has strongly implied that this is the case. During oral argument before the Court, Chenault for the first time asserted that "the trial judge's instructions to the jury during the sentencing stage of the trial about mitigating circumstances and the opportunity to recommend mercy were constitutionally inadequate." *Chenault v. Stynchcombe, supra,* 581 F.2d at 447. Although this Court remanded the case for failure to exhaust state remedies on the sentencing claim, it stated:

"It now seems that a death sentence imposed by a sentencer barred from considering mitigating circumstances will be

vacated by a six-member majority of the Supreme Court—the plurality in *Lockett* [v. *Ohio*, 438 U.S. 586 (1976)] and *Bell* [v. *Ohio*, 438 U.S. 637 (1976)] and Justices Brennan and Marshall. *This constitutional requirement to allow consideration of mitigating circumstances would have no importance, of course, if the sentencing jury is unaware of what it may consider in reaching its decision. We read* Lockett *and* Bell, *then, to mandate that the judge clearly instruct the jury about mitigating circumstances and the option to recommend against death.*" *(Id.* at 448) (emphasis added)

Here where the trial court failed to define the term "mitigating circumstances," gave no examples of mitigating circumstances, did not include in its instructions those mitigating circumstances presented by the evidence or explain the relationship between aggravating and mitigating circumstances, it is impossible to conclude that the court "clearly instruct[ed] the jury about mitigating circumstances." *Chenault v. Stynchcombe, supra,* 581 F.2d at 448. The jury simply was never informed that it must consider "not only why a death sentence should be imposed but also why it should not be imposed." *Jurek v. Texas,* 428 U.S. 262, 271 (1976) (Stewart, Powell, Stevens, JJ.).

In light of the "greater degree of reliability [required in sentencing procedures] where the death sentence is imposed," *Lockett v. Ohio,* 438 U.S. 586, 604 (1978); *see, e.g., Gardner v. Florida,* 430 U.S. 349, 357 (1977); *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976), this failure requires the reversal of appellant's sentence. To permit a jury to impose a capital sentence without adequate instructions from the trial court would be "virtually unthinkable." [27]

## CONCLUSION

For all of the reasons set forth above, we urge this Court to reverse the order of the district court and remand with directions that the relief requested by appellant in his petition for a writ of habeas corpus be granted.

Respectfully submitted,

*John Charles Boger*

JACK GREENBERG
JAMES M. NABRIT, III
JOEL BERGER
JOHN CHARLES BOGER
DEBORAH FINS
   10 Columbus Circle
   New York, New York 10019

ANTHONY G. AMSTERDAM
   Stanford University Law School
   Stanford, California 94305
ATTORNEYS FOR THE NAACP
LEGAL DEFENSE AND EDUCATIONAL FUND, INC.

**27.** "But the provision of relevant information under fair procedural rules is not alone sufficient to guarantee that the information will be properly used in the imposition of punishment, especially if sentencing is performed by a jury. Since members of a jury will have had little, if any, previous experience in sentencing, they are unlikely to be skilled in dealing with the information they are given ... It seems clear, however, that the problem will be alleviated if the jury is given guidance regarding the factors about the crime and the defendant that the State, representing organized society, deems particularly relevant to the sentencing decision.

"The idea that a jury should be given guidance in its decision-making is also hardly a novel proposition. Juries are invariably given careful instructions on the law and how to apply it before they are authorized to decide the merits of a lawsuit. It would be virtually unthinkable to follow any other course in a legal system that has traditionally operated by following prior precedents and fixed rules of law."

*Gregg v. Georgia, supra,* 428 U.S. at 192–93.

Of Counsel:

RICHARD SHAPIRO
H. DIANA HICKS
SOUTHERN PRISONERS' DEFENSE
COMMITTEE
  344 Camp Street
  New Orleans, Louisiana 70130
Dated: New York, New York
      October 22, 1979

---

*Appendix A*

Sentencing Instructions Given January 21, 1975 to Jury in *The State v. Alpha Otis O'Daniel Stephens,* Superior Court of Bleckley County

## FURTHER CHARGE OF THE COURT:

Gentlemen of the Jury, the defendant in this case has been found guilty at your hands of the offense of Murder, and it is your duty to make certain determinations with respect to the penalty to be imposed as punishment for that offense. Now in arriving at your determinations in this regard you are authorized to consider all of the evidence received in court throughout the trial before you. You are further authorized to consider all facts and circumstances presented in extinuation, mitigation and aggravation of punishment as well as such arguments as have been presented for the State and for the Defense. Under the law of this State every person guilty of Murder shall be punished by death or by imprisonment for life, the sentence to be fixed by the jury trying the case. In all cases of Murder for which the death penalty may be authorized the jury shall consider any mitigating circumstances of aggravating circumstances authorized by law. You may consider any of the following statutory aggravating circumstances which you find are supported by the evidence. One, the offense of Murder was committed by a person with a prior record of conviction for a Capital felony, or the offense of Murder was committed by a person who has a substantial history of serious assaultive criminal convictions. Two, the offense of Murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim. Three, the offense of Murder was committed by a person who has escaped from the lawful custody of a peace officer or place of lawful confinement. These possible statutory circumstances are stated in writing and will be out with you during your deliberations on the sentencing phase of this case. They are in writing here, and I shall send this out with you. If the jury verdict on sentencing fixes punishment at death by electrocution you shall designate in writing, signed by the foreman, the aggravating circumstances or circumstance which you found to have been proven beyond a reasonable doubt. Unless one or more of these statutory aggravating circumstances are proven beyond a reasonable doubt you will not be authorized to fix punishment at death. If you fix punishment at death by electrocution you would recite in the exact words which I have given you the one or more circumstances you found to be proven beyond a reasonable doubt. You would so state in your verdict, and after reciting this you would state, We fix punishment at death. On the other hand, if your recommend mercy for the defendant this will result in imprisonment for life of the defendant. In such case it would not be necessary for you to recite any mitigating or aggravating circumstances as you may find, and you would simply state in your verdict, We fix punishment at life in prison. Now, whatever your verdict may be with respect to the responsibility you have regarding sentencing please write these out, Mr. Foreman, immediately below the previous verdict you have rendered. Be sure

that it is dated and that it bears your signature as foreman. Once again when you have arrived at your verdict on the sentencing phase of the case let us know. We will then receive the verdict from you and have it published here in open court. Please retire now and consider the sentence in this case. (Tr. T. 320–22)

### Appendix B

Sentencing Portion of Instructions Given September 20, 1968 to Jury in *The State v. William Henry Furman,* Superior Court of Chatham County

Take this case, take the rules of law I have given you and apply them to the evidence in the case. If you find the defendant guilty as charged in the indictment, if you are satisfied beyond a reasonable doubt that he is guilty of murder, you should so find, and the form of your verdict would be, "We, the jury, find the defendant guilty." Now that, without more, would mean that the Court would, of necessity, sentence the defendant to the extreme penalty of the law which would be death by electrocution. If you find the defendant guilty of murder and in the exercise of the discretion which is left you by the law you should recommend mercy, then the form of your verdict would be, "We, the jury find the defendant guilty and recommend mercy." That form of verdict would carry as the punishment imprisonment in the penitentiary for life.

I charge you that the punishment for murder is death by electrocution, but you, the jury, have the right in your discretion to recommend him to the mercy of the Court and fix the punishment for life, either of which actions by you would be binding upon the Court. The jury does not have to give any reason for its action in fixing the punishment at life or death. It does not even have to find that there were extenuating circumstances. The punishment is an alternative punishment and may be one or the other as the jury sees fit. (Transcript of Trial, 117–18)